UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:14-CR-44-TLS |
| | ) | |
| CORY CASTETTER | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Dismiss or, in the Alternative, to Suppress [ECF No. 22], filed on December 22, 2014. The Defendant argues that an unlawful warrantless search by electronic means of his home provided the sole basis for a subsequent search warrant of his home, requiring the suppression of all evidence in this case and the dismissal of the Government's indictment. The Government responds that there was no violation of the Defendant's constitutional rights because the Defendant has not demonstrated that there was any search of his property, and the Defendant does not have standing to challenge the warrant and tracking of another individual's vehicle. For the reasons set forth in this Opinion and Order, the Court will deny the Defendant's Motion.

**BACKGROUND**

On December 22, 2014, the Defendant filed a Motion to Dismiss or, in the Alternative, to Suppress [ECF No. 22]. On December 24, 2014, the Government filed a Response [ECF No. 23] indicating that an evidentiary hearing would be necessary, and the Defendant agreed in his Reply [ECF No. 24], filed on January 6, 2015. The Court conducted an evidentiary hearing on February 11, 2015, in which the Court heard the testimony of several witnesses and several exhibits were admitted into the record. At the conclusion of the hearing, the Court took the Motion under

advisement and gave the parties additional time to file briefs. The Defendant filed a Brief in Support of His Motion to Dismiss, or in the Alternative, to Suppress [ECF No. 29] on April 8 2015, and requests that the Court suppress all evidence in this case and dismiss the indictment. The Government filed its Response [ECF No. 30] on May 22, 2015. The Defendant filed his Reply [ECF No. 31] on June 2, 2015. The matter is now fully briefed and ripe for ruling.

**FINDINGS OF FACT**

The Court makes the following findings of fact based upon the evidence and testimony presented during the evidentiary hearing conducted on February 11, 2015.

In September of 2014, the Defendant resided in a one-story home comprised of two rooms with a kitchen and a basement located at 6174 West Noe Street, Kimmel, Indiana. Railroad tracks run along the back of the property about twenty feet from the house, and the property also included a barn and a short driveway.

The Defendant was under investigation as a potential supplier of crystal methamphetamine in the Noble County, Indiana, area, and Task Force Officer (TFO) Sean Lundy of the Drug Enforcement Administration (DEA) was the lead investigator in the case. On September 4, 2014, TFO Lundy obtained and served a state search warrant of the Defendant's residence that led to the discovery of approximately one ounce of methamphetamine, a fentanyl patch, scales, lidocaine, loaded syringes, and approximately $62,000.00 in cash. Prior to obtaining the warrant, TFO Lundy consulted with Michigan police officers who provided information about an individual making two trips to the Defendant's residence and returning with methamphetamine. In particular, Michigan authorities had previously sought and obtained a search warrant, including the installation and monitoring of a global positioning system (GPS)

tracking device on a 1998 Ford Crown Victoria with a particular license plate that was registered to owners Mark Allen Holst ("Holst") and Ray Lynn-Nikole Hollister ("Hollister"), residents of White Pigeon, Michigan. The GPS unit included a satellite radio receiver that would periodically record, store, and upload location data to the Internet. A state magistrate in Michigan authorized the search warrant for the installation, maintenance, removal, and monitoring of the GPS for a period of ninety (90) days beginning on August 20, 2014.

After speaking with Michigan authorities, TFO Lundy prepared an affidavit in support of his request for the previously mentioned state search warrant for the Defendant's residence. TFO Lundy described the property to be searched and discussed an interview with a cooperating witness who knew of an individual who routinely traveled to the Defendant's residence to pick up "ice," or methamphetamine. TFO Lundy then discussed the information he obtained from his conversation with Michigan authorities, which included information from a Michigan informant and GPS about two trips to the Defendant's residence. Michigan authorities stated that the informant provided reliable information in the past, resulting in the seizure of two pounds of methamphetamine, as well as information concerning the activity of Holst. On August 30, 2014, the GPS information from Holst's car indicated that the car arrived at the Defendant's residence at approximately 12:48 PM and stayed for about 30 minutes before returning to Michigan. The informant told Michigan authorities that he knew Holst had driven to Kimmell, Indiana and returned to Michigan with methamphetamine. Holst's car was tracked again on September 4, 2014, this time with real-time GPS tracking. The car arrived at the Defendant's residence at approximately 12:10 PM and stayed for approximately 1 hour and 22 minutes before returning to Michigan. Michigan authorities tracked the car, noting that it made no significant stops, and

3

eventually stopped the car and executed a search warrant upon its return to Michigan. Officers found Holst to be the driver and discovered four ounces of methamphetamine in the car.

Shortly before the search warrant for the Defendant's residence was obtained, a surveillance officer observed the Defendant at his residence walking from the house to the outbuilding. The Defendant did not own the tracked vehicle, nor was it registered to the Defendant, and TFO Lundy understood the tracking of the vehicle to be lawful within Indiana based upon the Michigan warrant.

**ANALYSIS**

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The exclusionary rule is a judicially-created sanction "that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United Sates*, 131 S. Ct. 2419, 2423 (2011). "The Fourth Amendment protects people, not places," *Katz v. United States*, 389 U.S. 347, 351 (1967) (finding a violation in attachment of an eavesdropping device to a public telephone booth), and "a violation occurs when government officers violate a person's 'reasonable expectation of privacy,'" *United States v. Jones*, 132 S. Ct. 945, 950 (2012) (quoting *Katz*, 389 U.S. at 360). "A search occurs 'when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Karo*, 468 U.S. 705, 712 (1984) (internal quotation marks and citation omitted).

> At the risk of belaboring the obvious, private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable. Our cases have not deviated from this basic Fourth Amendment principle. Searches and seizures inside a home without a warrant are presumptively unreasonable absent exigent circumstances.

*Id.* at 714–15.

The Defendant argues that the sole basis for the search warrant for his home was a prior, warrantless search of his property by electronic means, accomplished by the GPS device attached to Holst's vehicle. According to the Defendant, the GPS device was used to monitor who was inside the Defendant's home and the duration of their stay, and that the "Government needed a warrant to electronically monitor the comings and goings from [the Defendant's] home." Reply 1, ECF No. 31. The Defendant claims that use of an electronic device, without a warrant, to determine whether a person was in the Defendant's home at a particular time was an illegal search in violation of the Fourth Amendment and that this improperly acquired information, used to connect the Defendant to the subsequently discovered methamphetamine in Holst's vehicle, provided the sole basis for the search warrant of his home. The Defendant argues that all subsequent evidence in this case was obtained as a direct result of this initial illegal electronic search, and thus requires the suppression of all the evidence in this case and the dismissal of the indictment pursuant to the fruit of the poisonous tree doctrine. Reply 2, ECF No. 31 (citing *Segura v. United States*, 468 U.S. 796, 804 (1984)).

The Government argues that the Defendant has not demonstrated that a warrantless search occurred on his property and that the Defendant lacks standing to challenge the Michigan warrant or the tracking of another person's vehicle on public roads and within public view.[1] In particular, the Government contends that the GPS

---

[1] The Defendant makes clear that he is not challenging the search of Holst's car or the warrant for the GPS device. Rather, he is challenging what he contends was a warrantless search of his home by electronic means. A defendant has standing to challenge a warrantless search if he has a "legitimate expectation of privacy" in the property that was searched. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The defendant need not own the property, *id.*, but his expectation of privacy must be "reasonable," which

device never revealed any private information about the interior of the Defendant's home that was not exposed to the public. Further, the Government argues that no search occurred because the car never entered the Defendant's house, and thus, the GPS could not have been used to monitor who was inside the Defendant's home.

First, the Defendant argues that the GPS device need not physically enter the home to constitute a search. Reply 3, ECF No. 31 (citing *Katz*, 389 U.S. at 353 ("[O]nce it is recognized that the Fourth Amendment protects people—and not simply 'areas'—against unreasonable searches and seizures it becomes clear that the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure.")). In *Kyllo v. United States*, 533 U.S. 27 (2001), the Supreme Court found a Fourth Amendment violation when police officers used thermal imaging cameras to learn about temperatures inside a home, thereby allowing them to deduce the presence of grow lights for an indoor marijuana growing operation. As *Kyllo* makes clear, electronic monitoring conducted in a manner that violates the Fourth Amendment need not necessarily require a physical intrusion into the protected space. Rather, the issue in this case is whether the monitoring of the GPS device was a "search" of the Defendant's home, necessitating a warrant in order to protect the Defendant's reasonable expectation of privacy.

---

means that it "has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (internal quotation marks omitted). The Court finds that the Defendant has a legitimate expectation of privacy in his own home and thus has standing to challenge what he contends was a warrantless search of his home. Therefore, the Government's argument that the Defendant lacks standing to challenge the tracking of another's vehicle is moot, for the Defendant has not made such a challenge.

Both parties compare and contrast the facts of this case with Supreme Court precedent concerning Fourth Amendment challenges to electronic monitoring via "beepers," another form of electronic tracking devices. In the first case, *United States v. Knotts*, 460 U.S. 276 (1983), the Court upheld the use of a beeper that had been placed in a container of chloroform, allowing law enforcement to monitor the location of the container. Law enforcement officials, with the consent of the seller, installed the beeper and monitored the container after delivery to a buyer in Minneapolis, Minnesota. Although they maintained partial visual surveillance as the automobile drove along public highways, the police ended visual surveillance when the driver began making evasive maneuvers. The beeper allowed officers to locate the container in the area of a cabin near Shell Lake, Wisconsin, which provided the basis for the issuance of a search warrant. The record before the Court did not reveal any monitoring of the beeper while the container was inside the cabin, and the Court held that since the movements of the automobile and arrival of the container in the area of the cabin could have been observed with naked eye, the beeper did not infringe on Knotts' reasonable expectation of privacy within his dwelling. *Id.* at 282 (noting that visual surveillance from public places would have revealed all the same facts to police).

The second beeper case, *United States v. Karo*, 468 U.S. 705 (1984), presented the question "whether the monitoring of a beeper in a private residence, a location not open to visual surveillance," violated the Fourth Amendment rights of those with a privacy interest in the residence. *Id.* at 714. In *Karo*, an informant allowed law enforcement to install a beeper inside a container of ether (used to extract cocaine from imported clothing) that police monitored and pinpointed to be inside a specific house.

Police broke off visual contact for fear of being detected, but monitored the beeper to determine that the container was inside the house, and monitored the beeper for a significant period of time after its arrival to verify that it was still inside. The Court concluded that no Fourth Amendment interests of the defendant were infringed by the installation of the beeper, but held that the warrantless monitoring of the beeper inside the house was a violation of the Fourth Amendment. The Court distinguished the case from *Knotts*, noting that monitoring the beeper "reveal[ed] a critical fact about the interior of the premises that the Government . . . could not have otherwise obtained without a warrant," whereas in *Knotts* the beeper told the authorities nothing about the interior of the home and only conveyed information that could have been visually verified from outside the curtilage of the house. *Id.* at 715.

The Defendant argues that the GPS was used to monitor who was inside the Defendant's home and the duration of their stay, arguing that, pursuant to *Karo*, the Government may not electronically determine whether a person is in the Defendant's home at a particular time without a warrant. Reply 4–5, ECF No. 31 (quoting *Karo*, 468 U.S. at 716 ("We cannot accept the Government's contention that it should be completely free from the constraints of the Fourth Amendment to determine by means of an electronic device, without a warrant and without probable cause or reasonable suspicion, whether a particular article—or a person, for that matter—is in an individual's home at a particular time.")). The Government argues that the GPS device revealed nothing about the inside of the Defendant's home, making this case more like *Knotts*.

The Court disagrees with the Defendant's interpretation of *Karo* and finds that there was no infringement of the Defendant's Fourth Amendment privacy interests in his

home. The Defendant argues that this case is distinguishable from the limited use of the beeper in *Knotts* because the GPS device, which was monitored continuously, determined who was in his house and the duration of their stay, thereby providing information about the inside of the Defendant's house without a warrant. However, the "critical fact" by which the Court found a violation in *Karo*, and distinguished it from *Knotts*, was that the Government obtained information about the *inside* of a home—namely, whether a particular article or person were inside at a particular time—through use of an electronic device "that it could not have obtained by observation from outside the curtilage of the house." *Karo*, 468 U.S. at 715.

Here, all of the information obtained by the Government through the electronic monitoring of the GPS device could have been visually verified and obtained without a warrant. The monitoring of the GPS device in this case indicated the location of the car and the duration of the car's stay at the Defendant's address. Standing alone, this information does not reveal who was in the home, what activities may have occurred there, or even how long individuals may have been in the home. The Court cannot agree with the Defendant's assertion that "the Government used warrantless electronic monitoring to determine whether a particular person was in [the Defendant's] home at a particular time." Reply 5. First, the police did not discover that Holst was the driver of the car until they executed the stop and search warrant of the car when it returned to Michigan from the second trip. The GPS device can only provide information about the location of the car and not the identity of the driver—or other occupants, if any—in the car. Second, the fact that the car arrived at the Defendant's address says nothing beyond that fact. Did the driver go in the house, or the barn, or stand outside in the yard, or walk

9

across the street to a different address altogether, or even exit the car? One could infer that the driver made the trip for some purpose, and hence did exit the car, but at the moment the GPS fails to provide additional information. *Cf. Kyllo*, 533 U.S. at 40 (thermal imaging camera allowed authorities to "explore details of the home that would previously have been unknowable without physical instrusion, [hence] the surveillance is a 'search'"); *Karo*, 468 U.S. at 715–16 (noting that the beeper allowed authorities to determine that the container was *inside* the house, a critical fact leading to the search warrant for the house).

Likewise, although the Court noted in *Karo* that "the beeper was monitored for a significant period of time after [its] arrival" inside the house, the length of time that the car—and thus the GPS device—were at the Defendant's residence reveals nothing about "the interior of the premises that the Government . . . could not have otherwise obtained without a warrant." *Karo*, 468 U.S. at 715. The information gathered by the GPS device could just as easily have been obtained through traditional visual surveillance. Indeed, officers would have obtained more information through traditional visual surveillance, as they could have visually verified who was driving the car and whether he went into the house, all without a warrant (presuming, of course, that such surveillance occurred from public places or adjoining premises where a warrant would be unnecessary).

In addition to the GPS device's inability to obtain any information about the interior of the Defendant's house, negating any alleged "search" of the house, the Government argues that the GPS was on the car pursuant to a valid warrant, negating any alleged "warrantless" accusations. However, the pivotal issue in this case is not the existence of a warrant for the GPS device, which the Defendant makes clear he does not

challenge, but rather whether the Defendant satisfies his burden to prove that there was a search of his house. *See United States v. Scott*, 731 F.3d 659, 663 (7th Cir. 2013) (party seeking suppression bears the burden of establishing he had a reasonable expectation of privacy in what was searched). Before reaching the question of whether a warrant is necessary in order to conduct a legal search, the Defendant must first establish that a search occurred.

The Court finds that monitoring of the GPS device, including the duration the car was parked at the Defendant's address, was not a search of the Defendant's house. Hence, the Defendant's Fourth Amendment privacy interests were not infringed.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss or, in the Alternative, to Suppress [ECF No. 22] is DENIED.

SO ORDERED on June 23, 2015.

                                                 s/ Theresa L. Springmann
                                                 THERESA L. SPRINGMANN
                                                 UNITED STATES DISTRICT COURT